## CUNNINGHAM MANUFACTURING COMPANY *v.* ROTOGRAPH COMPANY.

CONTRACTS; SALES; MISTAKE; PREJUDICIAL ERROR.

1. Before there can be a contract, the minds of the parties must meet honestly and fairly, without mistake or mutual misunderstanding upon all the essential points involved.

2. If in a contract of sale the seller names a consideration that is out of all proportion to the value of the subject-matter, and the purchaser, realizing that a mistake must have been committed, takes advantage of it, and refuses to let the mistake be corrected when it is discovered, he cannot properly claim there is an enforceable contract.

3. Where, upon receipt of a bill for goods, the purchaser discovers that in the negotiations for the purchase a mistake was made as to the selling price, and he refuses to return the goods, he will be deemed to have accepted them at the price for which they were billed, and thereby a new and enforceable contract will be created upon which he may be held liable.

4. Where the evidence called for the direction of a verdict for the plaintiff, but the case was submitted to the jury, who found for the plaintiff, the defendant has no right to complain of error in the trial court's instructions to the jury.

No. 1782.    Submitted February 6, 1908.    Decided March 3, 1908.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon a verdict of a jury in an action to recover the purchase price of goods sold and delivered.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This action was originally brought by the appellee company, the Cunningham Manufacturing Company, before a justice of the peace of the District of Columbia. Judgment was rendered

by the justice against appellant company, the Rotograph Company, from which appeal was taken to the supreme court of the District. The case was there tried to a jury, and, upon a verdict in favor of appellee, judgment was rendered against appellant for the sum of $225.85, from which this appeal is prosecuted.

It appears that on March 7, 1906, the appellee, a New York corporation engaged in the business of manufacturing and selling souvenir postal cards, sent a letter to the appellant, a corporation engaged in business in Washington, inclosing a sample of a new card it was publishing of various Washington views. The latter stated that the regular price of the cards was $15 per thousand, but it was making a price to jobbers of $1 per thousand. The evidence produced by appellee shows that this letter was copied on a typewriter by a stenographer from a circular letter, and, through some mistake, the price was inserted at $1 per thousand, when $10 per thousand was the price quoted in the circular letter, and the price intended to be quoted to appellant. To this letter appellant replied as follows: "In answer to your letter of the 7th inst., will say, your sample card sent us is very good, and owing to the price you quote us the stock must be faulty in some way, or your stenographer made a mistake in the price. If the stock is good and price is correct as quoted us, will take several thousand." The general sales manager of the appellee company, the only witness appearing at the trial on its behalf, testified that on receipt of this letter he looked up the copy of the circular letter from which the letter sent to appellant had been copied (no copy of the letter sent having been retained, and replied by letter to the effect that the cards were first class in every respect, but they were being sold at cost, and they would guarantee them in every respect. On receipt of this letter, appellant wrote a letter ordering 25,000 cards as per samples at price quoted in appellee's original letter giving the date. The price of $1 per thousand, however, was not mentioned in this letter. Appellee, not having the full number in the subjects ordered, shipped to appellant by freight 22,585 cards. Regarding this shipment,

witness for appellee tesified "that the goods were shipped of his personal knowledge March 20, 1906, by freight, he thinks, over the Pennsylvania railroad, not later than 1 P. M., or it might be a little before or after 12.   *   *   *   That he sent bill to defendant by mail same afternoon that goods were shipped." The bill is as follows:

New York, March 20, 1906.
Cunningham Mfg. Co., Washington, D. C., to The Rotograph Co., Dr.
22585 Style S. at $10.                              $225.85

The only witness appearing on behalf of appellant testified that he did not know, and had no reason to believe, that the letter of March 7 was a circular letter; that the goods arrived here March 21, 1906, between 2 and 3 o'clock in the afternoon, and were received and accepted by him, and at once unpacked and placed upon his shelves; that between 4 and 5 o'clock of the same afternoon he received the bill for the goods, showing a price of $10 instead of $1; that he immediately wrote plaintiff the following letter, calling its attention to the discrepancy between the bill and the price quoted:

We have just received your bill for postal cards and return it for correction. The price of these cards is $1 instead of $10, as you bill them. We refer you to your letter of the 7th inst., when you sent us sample and price.

That he had no intimation of the alleged error, other than heretofore testified to, until the receipt of the bill, which was on the same day returned to plaintiff for correction. The receipt of plaintiff's letter of March 22, 1906, contained the first intimation he had as to the alleged mistake. The letter reads as follows:

Gentlemen:
In reply to your valued favor we beg to inform you that there is evidently an error some place. The price of the cards as

quoted you was ten dollars ($10) per thousand, and not $1. The duty alone on these cards costs us $2.25 per thousand, and you can readily understand that it would be impossible for us to sell same at any such price as $1 per thousand. If the price we give you is not satisfactory at $10 per thousand, we would request that you send us the cards immediately, as we have orders that will take up all the stock. Kindly return us the letter in which you state that you are quoted $1 per thousand.

In reply to a question by the court, witness said that the reason he did not return the goods after receipt of plaintiff's letter was because he had in good faith made a contract with plaintiff to deliver the cards at $1 per thousand, and had received the goods, and he did not desire to cancel it.

*Mr. Joseph R. Fague, Mr. Andrew Wilson,* and *Mr. Noel W. Barksdale* for the appellant.

*Mr. John C. Gittings, Mr. J. M. Chamberlin,* and *Mr. Arthur Garfield Hays* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Numerous technical errors are assigned, but, we think that the application of the law governing contracts of this kind will sufficiently dispose of this case, without considering separately the errors assigned. It is evident that there was not such a meeting of the minds of the parties in fixing the consideration as would constitute a contract. Before there can be a contract, the minds of the parties must meet honestly and fairly, without mistake or mutual misunderstanding, upon all the essential points involved in the transaction composing the contract. If one of the parties, through mistake, names a consideration that is out of all proportion to the value of the subject of negotiation, and the other party, realizing that a mistake must have been committed, takes advantage of it, and refuses to let the mistake be corrected, when it is discovered, he cannot, under

these conditions, claim an enforceable contract. The law is that, where there is a mistake that amounts to a mutual misunderstanding, or that on its face is so palpable as to place a person of reasonable intelligence upon his guard, there is not a meeting of the minds of the parties, and consequently there can be no contract.

In the case at bar, it is no excuse that appellant had received the goods before the mistake was discovered. Assuming that the goods came by freight from New York in twenty-four hours, and reached appellant some hours in advance of the bill, which was mailed at the same time the goods were shipped, and assuming, also, that the goods were unpacked and placed upon appellant's shelves within two hours after their arrival and one hour before the arrival of the bill, these nice and accurate distinctions of time will not relieve appellant from aiding in the correction of the mistake when it was discovered, either by returning the goods as requested by appellee, or paying the price named in the bill.

Appellant company, by its refusal to return the goods when the mistake was discovered, and its election to retain them, will be deemed to have accepted the goods at the price for which they were billed, thereby creating a new and enforceable contract, for which it must be held liable. This is not a case of incompetent parties, or where a party is seeking to urge his own carelessness as a valid excuse for his own mistake, or where one of two innocent parties is called upon to suffer loss after the goods have passed into the hands of innocent purchasers, or the transaction had passed beyond the control of the original parties. The case before us turns upon the refusal of the appellant to return the goods when it was dicovered that, by reason of a palpable mistake, there had been no meeting of the minds of the parties, and no contract existed between them. Under these conditions, by appellant's election to retain the goods it thereby created a valid contract, and bound itself to pay for the goods at the consideration named in the bill.

A case closely analogous to the one at bar is cited in brief of counsel for appellee,—*Mummenhoff* v. *Randall,* 19 Ind.

App. 44, 49 N. E. 40. In that case, plaintiff wrote defendant
as follows:

Gentlemen:
Can we not get to doing some business? I quote you the
following low price on potatoes,—35 cts.

It appears that the letter was dictated to a stenographer.
By mistake, the price was written at 35 cents a bushel, instead
of 55 cents, as was dictated to her. Defendant answered:

Please ship us two or three cars at your earliest convenience,
at price quoted.

Upon receipt of this, plaintiff shipped the potatoes, and sent
a bill by mail, charging 55 cents per bushel. On receipt of
the bill, defendant telegraphed back:

You offered potatoes at thirty-five, bill at fifty-five. Explain.

Plaintiff telegraphed it was a mistake. The defendant, how-
ever, accepted the potatoes, and refused to pay more than 35
cents. Thereupon plaintiff brought suit for the difference in
price. The court held that there was no meeting of the minds
of the parties, and no contract, for, "as mutual assent is neces-
sary to the formation of a contract,    *   *   *   it follows
that an error or mistake of fact in that which goes to the essence
of the agreement, and therefore excludes such assent, prevents
the formation of the contract, since each party is really agree-
ing to something different, notwithstanding the apparent mu-
tual assent." The court, considering the fact that the pur-
chaser must have known of the mistake, said: "The minds of
the contracting parties never met upon a proposition to sell
potatoes at 35 cents per bushel, because it is alleged that the
price was a mistake, and that it was so understood by appel-
lant, to whom it was made.    *   *   *   He [the defendant]
knew that appellee [plaintiff] had not, in fact, offered the po-
Vol. XXX.—34.

tatoes at that price." The court here expressed the law of this case. If the rule could be applied where the mistake consisted in quoting a price one third below the price intended, what can be said where the variance is so unconscionable as the one at bar? In *Moffett, H. & C. Co.* v. *Rochester,* 178 U. S. 373, 44 L. ed. 1108, 20 Sup. Ct. Rep. 957, the court, considering a case where a mistake had been made by a· bidder for the performance of public work, said: "If the defendants are correct in their contention, there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth a million dollars for $10, he must be held to the strict letter of his contract, while equity stands by with folded hands, and sees him driven to bankruptcy."

It is charged that the court erred in its instructions to the jury. The conceded facts in this case would have justified a peremptory instruction for the appellee. It is therefore not clear just how the appellant could be prejudiced by the instructions given, where the verdict was for the amount warranted by the evidence.

The evidence resolves itself to a concession by appellant that, after notice of the mistake and the offer on the part of appellee to have the goods returned, it retained them. Having elected to pursue this course, appellant obligated itself to pay for them at the price called for in the bill.

The judgment is therefore affirmed, with costs, and the cause remanded, to be disposed of in accordance with the views expressed in this opinion.                 *Affirmed.*